UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICKIE DIANNE BYRD,

        Plaintiff,  **No. 6:14-cv-06470(MAT)**
              **DECISION AND ORDER**
   -vs-

NYS FINGERLAKES DEVELOPMENTAL
DISABILITIES SERVICES
O.P.W.D.D.,

        Defendant.

---

**INTRODUCTION**

  Proceeding pro se, Vickie Dianne Byrd ("Plaintiff") instituted this action by filing a complaint (Dkt #1) dated August 11, 2014, alleging that "NYS Fingerlakes Developmental Disabilities Services O.P.W.D.D."[1] discriminated against her in connection with her application for employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101–336, 104 Stat. 327, amended by ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008); and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq.

  Presently before the Court is Defendant's renewed Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure

---

[1] This term appears to be a conflation of the New York State Office For People With Developmental Disabilities ("OPWDD") and the Finger Lakes Developmental Disabilities State Operations Office ("FLDDSOO").

("F.R.C.P.") 56. For the reasons that follow, it is granted in its entirety.

**FACTUAL BACKGROUND**

The Court's factual summary is gleaned principally from Defendant's Statement of Facts and the Affidavit of Julie Pape, along with the admissible evidence cited therein. Unless otherwise noted, the facts below are undisputed.

On July 6, Plaintiff applied for the position of Direct Support Assistant Trainee with the FLDDSOO in Rochester, New York. A Direct Support Assistant ("DSA") cares for individuals with developmental disabilities, typically in a community residential setting. DSAs have substantial direct and unsupervised contact with this vulnerable population. In light of this, OPWDD conducts background checks on all job applicants for direct care positions, including the position of DSA. The results are then reviewed in accordance with New York Correction Law ("Corr. Law") Article 23-A and a determination is made whether the applicant may be hired, subject to his or her satisfactory completion of the hiring process. DSAs must also meet the physical and medical requirements of the position as set forth in the Civil Service Statement of Physical and Medical Requirements for Direct Support Assistant. To that end, job candidates undergo physical and psychological/psychiatric testing by the New York State Department of Civil Service.

On November 19, 2012, Julie Pape ("Pape"), a Senior Personal Administrator assigned to the FLDDSOO, along with Senior Personnel Administrator Jeannette Mallaber, interviewed Plaintiff for the DSA Trainee position. Also on that day, Plaintiff was fingerprinted. Plaintiff was informed that her pre-placement testing with the Employee Health Services ("EHS") was scheduled for December 7, 2012.

On November 20, 2012, Plaintiff's fingerprint test results revealed that she had an unresolved criminal charge which she had failed to disclose on her application. The following day, Plaintiff was notified not to attend the scheduled appointment at EHS due to the issue raised by her fingerprint results and that OPWDD was holding her application in abeyance.

On November 26, 2012, Plaintiff sent Pape a letter requesting that the hold on her application be lifted and that it continue to be processed.

On December 3, 2012, Plaintiff filed a complaint against OPWDD FLDDSOO with the New York State Division of Human Rights ("NYSDHR"), claiming to have been subjected to discrimination in connection with her application for the DSA Trainee position. By decision dated January 15, 2013, the NYSDHR dismissed the complaint, finding that there was no probable cause to believe that OPWDD engaged in unlawful discrimination by placing Plaintiff's application on hold pending resolution of her criminal charge.

On December 11, 2012, Plaintiff was notified by mail that her application could not be processed further until she resolved the theft charge on her record. On January 4, 2013, Plaintiff faxed evidence of the disposition of her theft charge to Pape.

When Plaintiff subsequently inquired about the status of her application, she was informed that she needed to be fingerprinted again. OPWDD's policy requires that no applicant may commence employment on a date more than thirty (30) days after fingerprinting.

On August 28, 2013, Plaintiff was fingerprinted a second time. On September 5, 2013, OPWDD Criminal Background Check Unit issued a limited Findings letter to FLDDSOO with the following determination: "OPWDD has not
issued a denial and has not directed the agency, sponsoring agency, or provider of services to issue a denial [of employment to Plaintiff]."

However, a hiring freeze was in place due to the closing of FLDDSOO's Monroe Developmental Center. Available openings FLDDSOO's community residences—where Plaintiff wished to work—were being filled by displaced employees. Nonetheless, on October 9, 2013, Pape verbally offered Plaintiff the option of proceeding with the required physical and psychological testing while awaiting an opening and the Director's decision about her background check. Plaintiff accepted.

On November 4, 2013, Plaintiff was examined at EHS. By letter dated November 21, 2013, EHS informed her that she had she failed the testing. Specifically, her physical examination revealed several medical abnormalities. In addition, Plaintiff failed the Minnesota Multiphasic Personality Inventory ("MMPI") test. Plaintiff sent the necessary medical documentation to EHS to clear those medical concerns. However, due to the unsatisfactory psychological testing results, EHS required that Plaintiff be personally interviewed by its psychologist, Dr. Griffiths.

On January 7, 2014, Plaintiff underwent the psychological interview with Dr. Griffiths but failed to pass. EHS consequently advised FLDDSOO that Plaintiff was required to submit to an additional, final interview before a decision could be made as to application. On January 8, 2014, Pape advised Plaintiff that she was scheduled for a final interview with EHS psychologist Dr. Wapner on January 22, 2014.

On January 21, 2014, Plaintiff called Pape and requested that the interview with Dr. Wapner be rescheduled. Pape rescheduled the appointment to the first date Plaintiff was available, February 26, 2014. On February 26, 2014, EHS informed Pape that Plaintiff was a "no show" for her scheduled interview, which resulted in OPWDD being charged $160. Because Plaintiff did not complete the final interview, EHS was unable to make a final decision on her qualifications.

At 1:07 a.m. on February 27, 2014, Plaintiff left Pape a voicemail message stating that would not be able to attend the February 26, 2014 interview (which she had already missed). Plaintif offered no explanation for her failure to attend, nor did she request a new appointment. She also did not request that Pape return her call.

On March 11, 2014, Plaintiff called Pape and yelled at her regarding the application process. During the 15-minute call, Plaintiff never explained her failure to appear for the interview scheduled the previous month. When Pape asked Plaintiff if she wanted to reschedule her interview, Plaintiff replied in the negative. She also accused her of discriminating against her on the basis of her race and threatened to sue Pape.

On March 20, 2014, Plaintiff again called Pape and demanded that Pape provide her with a written decision regarding her employment application.

On April 1, 2014, Barbara McGuire ("McGuire"), FLDDSOO Director of Human Resources, sent a letter to Plaintiff informing her that she would not be hired. In pertinent part, McGuire noted Plaintiff's failure to successfully complete the EHS evaluation, which is mandated by the Department of Civil Service for all DSA Trainee candidates. McGuire also cited Plaintiff's "highly inappropriate" comments and "extremely loud, rude, confrontational, and threatening" tone during her conversation with Pape on March 11, 2014. McGuire informed Plaintiff that given her "refusal

to participate in the EHS evaluation process, as well as [her] grossly inappropriate behavior while speaking with Ms. Pape, OPWDD decline[d] to offer [her] any employment." Exhibit D to Pape Affidavit, Docket No. 52-3, p. 25 of 25.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure ("F.R.C.P.") 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**DISCUSSION**

**I. The Material Facts Are Undisputed**

Western District of New York Local Rule of Civil Procedure 56(a)(1) ("L.R. 56(a)(1)") sets forth the required contents and form of a statement of facts in support of summary judgment motion. Defendant, in accordance with L.R. 56(a)(1), has set forth the

material and essential facts as to which it contends there is no material dispute, citing admissible evidence. Moreover, L.R. 56(a)(2) provides that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." W.D.N.Y. L.R. 56(a)(2). Plaintiff has not submitted an opposing statement of facts, much less responded to Defendant's renewed request for summary judgment, despite being clearly advised regarding the consequences of not responding to the motion. The Court finds that Plaintiff has not fulfilled her obligations under F.R.C.P. 56(c), L.R. 56(a)(1), and L.R. 56(a)(2). Therefore, Defendant's statement of facts must be deemed admitted.

**II. Plaintiff's Discrimination Claims All Fail as a Matter of Law**

Title VII claims for employment discrimination are analyzed under the three-part burden-shifting framework first set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). ADEA claims are analyzed under this same standard. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)). Claims alleging disability discrimination in violation of the ADA also are subject to the McDonnell Douglas burden-shifting analysis. McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). As discrimination claims brought under the NYSHRL "are analytically identical to claims brought under Title VII[,]"

Torres v. Pisano, 116 F.3d 625, 629, n. 1 (2d Cir.), cert. denied, 522 U.S. 997 (1997), the McDonnell Douglas framework applies to NYSHRL claims as well. Id.

Under the McDonell Douglas framework, a plaintiff must first establish a prima facie case of discrimination under the pertinent statute. See 411 U.S. at 802-04. If the plaintiff can meet her de minimis burden of making out a prima facie case, the employer then is required to offer a legitimate, non-discriminatory business rationale for its actions. Abdu-Brisson, 239 F.3d at 466 (citing McDonnell Douglas, 411 U.S. at 802-04; Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-04 (2d Cir. 1995)). "If the employer articulates such a reason, the presumption of . . . discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that . . . discrimination was the true reason for the adverse employment action." Abdu-Brisson, 239 F.3d at 466 (citing McDonnell Douglas, 411 U.S. at 802-04).

Under all four statutes, one of the required elements of a prima facie case is that the plaintiff is qualified for the employment position in question. See Abdu-Brisson, 239 F.3d at 466 (ADEA and NYSHRL); Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001) (Title VII and ADEA), superseded in part on other grounds by FED. R. CIV. P. 37(e) (2015); McBride, 583 F.3d at 98 (ADA). Here, Plaintiff cannot prove by a preponderance of the evidence that she was qualified for the position given that she did

not fulfill pass the psychological screening required by the New York State Department of Civil Service. Specifically, Plaintiff failed each psychological test and psychological interview that she did complete (i.e., the MMPI and the interview with Dr. Griffiths). Furthermore, Plaintiff failed to appear for her final psychological evaluation with Dr. Wapner at EHS, which rendered her application incomplete.

Even assuming arguendo, for purposes of resolving this motion only, that Plaintiff has made out prima facie cases under the ADA, ADEA, Title VII, and the NYSHRL, Defendant has fulfilled its burden of production by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quotation omitted); accord Meiri v. Dacon, 759 F.2d 989, 994 (2d Cir. 1985). An employer "need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original; citation omitted). Plaintiff's failure to satisfactorily pass and complete the psychological testing required for the position of DSA Trainee, discussed above, also qualifies as a legitimate, nondiscriminatory reason for OPWDD's decision not to hire her.

Defendant has furnished another legitimate, nondiscriminatory reason for declining to hire Plaintiff, namely, her confrontational

-10-

and belligerent behavior toward the individual overseeing her job application process. Plaintiff has not opposed or otherwise responded to Defendant's motion, and the facts regarding her conduct have been deemed admitted. Thus, it is not in dispute that Plaintiff engaged in the behavior described in McGuire's letter informing her that she would not be offered employment with OPWDD.

Once an employer has satisfied its burden of producing a legitimate nondiscriminatory reason for its hiring decision, "the plaintiff has an opportunity to show that the reason was merely a pretext for discrimination. Pretext may be demonstrated either by presentation of additional evidence showing that the employer's preferred explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir. 1994) (internal quotation marks omitted) (quoting Burdine, 450 U.S. at 256; citation omitted). At this stage, the court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting Schnabel, 232 F.3d at 90; citation omitted). Plaintiff's evidence in support of her discrimination claim consists entirely of her own allegations of disparate treatment, which do not suffice to meet the de minimis burden imposed by the first McDonnell Douglas step. And, Plaintiff has come forward with no "additional evidence,"

Chambers, 43 F.3d at 38, to show that OPWDD's legitimate reason for declining to offer her a position of employment is false. Therefore, as a matter of law, Plaintiff cannot carry her '"ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against . . . [her][.]'" Woodman, 411 F.3d at 76 (quotation omitted). Her causes of action under Title VII, the ADA, the ADEA, and the NYSHRL must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's renewed Motion for Summary Judgment is granted, and the Complaint is dismissed in its entirety. The Clerk of Court is directed to close this case. The Court further certifies that any appeal of this decision and order would not be taken in good faith, and therefore denies Plaintiff permission to proceed in forma pauperis on appeal.

**SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated: November 21, 2018
Rochester, New York.